IN THE

## SUPREME COURT OF JUDICATURE

OF THE

## STATE OF NEW-YORK,

In MAY TERM, in the TWENTY-NINTH YEAR of our
INDEPENDENCE.

———

Joaquim L. Steinbach *against* William Ogden.

THIS was an action upon a policy of Insurance, on the cargo of the sloop *Britton*, *M'Culloch* master, on a voyage from *Trinidad* to *New-York*, averring the loss to be from the barratry of the master. The subscription, interest, proof of loss and abandonment being admitted, a verdict was entered for the plaintiff, subject to the opinion of the Court on the following case.

The vessel, owned by some merchants in the *United States*, sailed from *Norfolk* in *Virginia*, on a voyage to *Curracoa*, under the command of *M'Culloch ;* who, instead of proceeding to his port of destination, ran away with her, and went to the Island of *St. Bartholomew*, where he procured a fraudulent survey, under which he sold vessel and cargo at public auction, becoming himself the purchaser of the sloop, but without taking a bill of sale from the vendue-master, who merely gave an account of the sale, stating him to be the purchaser. From *St Bartholomew's* he went to *Trinidad*, and there having, in the character of Captain, contracted with the plaintiff's agent to take in a full freight, signed, as master, regular bills of lading for 244 hogsheads of sugar, and 189 quintals of Braziletto, deliverable to the plaintiff in *New-York*. After this he sailed from *Curracoa* to the *Havana*, where he embezzled

NEW-YORK,
May, 1805.

J. L. Steinbach
v.
Wm. Ogden.

Under a count averring a loss by the barratry of the master, it is not incumbent on the assured to prove, that the master was not the owner. It must, if relied on as a defence, be shewn by the underwriter ; a fraudulent sale and purchase by the master of a vessel, will not constitute such an ownership as to afford a defence to a claim for a loss by his barratry. A person

A

NEW-YORK.
May, 1805.

J. L. Steinbach
v
Wm Ogden.

contracting and dealing with a master who had purchased in his owner's vessel, in his capacity of master, may recover under a count for barratry, a loss occasioned by the fraudulent conduct of such master.

the whole cargo, but wrote from thence, ordering insurance on the vessel, in his own name, as owner.

*Colden* for the Plaintiff. It will be contended on the other side, that *M'Culloch* was owner, as well as master, and therefore could not commit barratry. We, on the other hand, insist, that in judgment of law, he was master only ; his fraudulent acts, barratrous, and the defendant consequently liable. The plaintiff dealt with him as master ; he acted in that capacity, both in making the agreement, and signing the bills of lading. This, to a shipper, is sufficient to shew he was so, and throw the *onus* of proving the contrary on the defendant. *Ross* v. *Hunter* 4 *D.* & *E.* 33. Against this, may be urged the fact of the purchase at *St. Bartholomew's.* By this, it may be argued, he ceased to be captain, and became owner. The deduction, however, cannot be supported. He had only a fiduciary possession, and it is a settled principle, that a trustee cannot, even by a *bona fide* sale acquire a title against his *cestui que trust.* *Berry* v. *Smith.* *Vern.* 60. 84. A *fortiori* when the sale is fraudulent. That the vessel was originally delivered to *M'Culloch* with the assent of the owners, will not alter the position. A tortious conversion cannot be rendered less so, because the property converted was voluntarily put into the hands of the wrong-doer by the proprietor. If a horse, hired for a day, be ridden away with, *animo furandi*, it is, notwithstanding the manual tradition of the owner, a felony. The purchase then by *M'Culloch* was for the benefit, and on account of his employers. Under the circumstances detailed in the case, a sale by him would not have passed any title, even to a third person. The reason is obvious ; it is out of the general scope of a master's authority, and extreme necessity alone will warrant such a measure. *Ekins* v. *East India Company.* 1 *P. W.* 395, *Abbott*, 2 to 4. Without such necessity, he can not even create a lien upon the ship ; and that it actually exists, it is the duty of the person, in whose favour the charge is imposed, to enquire. *Moll. b.* 2. *c.* 1. § 10. *Bridgman's Case, Hob.* 12. 2 *Marsh.* 639. 2 *Emer.* 434. 441. But allowing the vessel to have been *M'Culloch's,* still, as she was entirely freighted by the plaintiff, he was *pro hac vice,* the owner. *Vallejo* v. *Wheeler, Cowp.* 147. It is not necessary that there should be any written contract, or conveyance of the right in the ship for the voyage, to constitute a *pro hac vice* ownership. It is sufficient if the whole use and occupation of her is disposed of. *Nutt* v. *Bordieu,* 3 *D. E.* 327. *Abbott,* 82. 148. *Ross* v. *Hunter* 4 *D.* & *E.* 38. *per Buller J.*

*Pendleton* & *Harison* contra. The principal question is, who, in insurance, is to be deemed the owner ? A general freighter of the whole ship cannot be considered so, when the captain is neither appointed by him, nor under his direction. There must be a control over the vessel to constitute an ownership. The plaintiff had none here, and with respect to all the world, except perhaps the original proprietors, *M'Culloch*, by the purchase, was the owner. His signing the bills of lading, is no argument against this ; the instrument is no more than a receipt for the goods shipped, and an engagement to carry them. Even a master-owner must thus contract for their conveyance, as there is, according to the established usage of trade, no other mode. *Ross* v. *Hunter*, decided only, that it was not necessary in an action on a policy averring the loss to be by barratry, to prove, negatively, that the master was not owner. Nor is it requisite that he should be so, with all the rights of a legal title, to prevent a possibility of committing barratry. A color of title is enough, and *M'Culloch's* was impeachable, only by his employers. As to third persons, it was valid, for the trustee is accountable to his *cestui que trust* alone. Indeed as to land the trustee is the legal owner. The authority from *Vernon* therefore does not apply. In *Parish* v. *Crawford*, 2 *Stra.* 1251, the charterer was held not to be the owner, as the master was not of his appointment. The true criterion to determine the question of ownership, is by enquiring whether the control of the vessel has been parted with.

*Riggs* in reply. It might perhaps be the safest rule with respect to barratry to say, that the assent which is to render the master's act not barratrous, ought to be the assent of the owner of the subject matter of insurance. For, no reason can be assigned why the consent of the owner of the ship to the conduct of the master, should take away from the proprietor of the cargo his remedy against the insurer. If however the title of *M'Culloch* is void against his owners, on account of the fraud, the defendant cannot set it up against us.

*Per curiam* delivered by THOMPSON, J. There is nothing in the case, tending to shew, that the agent of *Steinbach* had any knowledge of the manner in which *M'Culloch* had conducted himself, or that he pretended to be owner of the vessel. All the circumstances stated, lead to the conclusion, that *M'Culloch* was considered by him as master only. He appeared in the character of master. The bill of lading was signed by him as master. The agreement respecting the freight was made with him

NEW-YORK,
May 1805.

as master, as the witness understood. Under this statement I think the agent must be deemed, *primâ facie* at least, as dealing with him in the character of captain, and in no other capacity. In addition to which he is described in the policy as master, so that the underwriter contracted to indemnify the plaintiff against the barratry of this very man. It could not be incumbent on the assured to prove that the master was not the owner of the vessel. That would be calling on him to establish a negative. Proof of that fact, which is to operate as a discharge of the underwriter, lies on him ; and if the master was not the owner, it is immaterial, as it respects the present question, who was. It is unnecessary therefore to examine or determine whether the general freighter is to be considered owner *pro hac vice*, or not ; for, it being admitted that *M·Culloch* went to the *Havana* for fraudulent purposes, the underwriter will be liable for the loss by barratry, unless the master was also owner. I am satisfied that *M'Culloch* could not be considered as the owner. There does not appear to have been any necessity for selling the vessel at *St. Bartholomew's*. Independent of this, however, it is expressly admitted, that the sale and all the proceedings were fraudulent. Such sale cannot be made the basis for establishing any rights, or exonerating from any responsibilities. It must, in judgment of law, be deemed *ipso facto* void. The *onus* of proving that *M'Culloch* was owner lay on the defendant, and it cannot be tolerated in a court of justice, that a party should be permitted to derive any benefit or advantage from a transaction confessedly founded in fraud. The opinion of the court, therefore is, that the plaintiff is entitled to recover as for a total loss.